UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AIG EUROPE LIMITED; ZURICH AMERICAN INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; STARR INDEMNITY & LIABILITY COMPANY; and AGCS MARINE INSURANCE COMPANY; as subrogees of Lafarge Building Materials, Inc.; and LAFARGE BUILDING MATERIALS, INC., <br><br> Plaintiffs, <br><br> - v. - <br><br> NORTHROP GRUMMAN SYSTEMS CORPORATION; NORTHROP GRUMMAN SPERRY MARINE ASIA, INC.; JOHN DOE ENTITIES 1-10, whose true names are unknown; and JOHN DOE INDIVIDUALS 11-20, whose true names are unknown, <br><br> Defendants. | 15 Civ. (   ) <br><br> **COMPLAINT** |

Plaintiffs, AIG Europe Limited ("AIG"); Zurich American Insurance Company ("Zurich"); National Union Fire Insurance Company of Pittsburgh, PA ("National Union"); Starr Indemnity & Liability Company ("Starr"); and AGCS Marine Insurance Company ("AGCS"); all as subrogees of Lafarge Building Materials Inc. (collectively "Underwriters"); and Lafarge Building Materials, Inc. ("Lafarge"), by and through their attorneys, Kennedy Lillis Schmidt & English and White and Williams LLP, allege – upon information and belief – as follows:

## INTRODUCTION

1. This action arises out of a collision involving the Tug DORIS MORAN ("Tug") during tow operations on or about 13 August 2013. Because of (*inter alia*) the malfunc-

tion of the Tug's steering mechanism ("Steering Mechanism"), the Tug collided with the Barge ALEXANDRA ("Barge") on navigable waters and damaged the Barge and the cement cargo being carried therein ("Cargo").

## PARTIES

2. Lafarge is an Alabama corporation with a place of business at 75 25th Street, Brooklyn, New York 11232.

3. At all relevant times, Lafarge owned and/or had an insurable interest in the Barge and Cargo.

4. AIG is a United Kingdom corporation with an office for the transaction of business at 58 Fenchurch Street, London, EC3M 4AB, United Kingdom.

5. At all relevant times, AIG insured the Cargo.

6. Zurich is a New York corporation engaged in the insurance business with a statutory home office located at One Liberty Plaza, 165 Broadway, 32nd Floor, New York, New York 10006, and its principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196. It is authorized to transact business and has transacted business in (*inter alia*) New Jersey.

7. At all relevant times, Zurich insured (*inter alia*) 30% of the Barge's hull and machinery.

8. National Union is a Pennsylvania corporation with a principal place of business at 175 Water Street, 18th Floor, New York, New York 10038.

9. At all relevant times, National Union insured (*inter alia*) 18.5% of the Barge's hull and machinery.

10. Starr is a Texas corporation with a principal place of business at 399 Park Avenue, 8th Floor, New York, New York 10022.

11. At all relevant times, Starr insured (*inter alia*) 21.5% of the Barge's hull and machinery.

12. AGCS is an Illinois corporation with a principal place of business at 225 West Washington, Suite 1800, Chicago, Illinois 60606.

13. At all relevant times, AGCS insured (*inter alia*) 30% of the Barge's hull and machinery.

14. Northrop Grumman Systems Corporation is a Delaware corporation with a place of business at 12 Park Street, Cranford, New Jersey 07016.

15. Northrop Grumman Sperry Marine Asia, Inc. is a Virginia corporation with a place of business at 2980 Fairview Park Drive, Falls Church, Virginia 22042.

16. Northrop Grumman Systems Corporation and/or Northrop Grumman Sperry Marine Asia, Inc. (collectively "Sperry Marine") designed, manufactured, and sold the Steering Mechanism.

17. John Doe Entities 1 through 10 are business entities, the names and addresses of which are unknown, that distributed, inspected, maintained, serviced, and/or repaired the Steering Mechanism.

18. John Doe Individuals 11-20 are individuals, the names and addresses of whom are unknown, who distributed, inspected, maintained, serviced, and/or repaired the Steering Mechanism.

## JURISDICTION & VENUE

19. The premises herein establish an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Honorable Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1333.

20. Venue is proper because Sperry Marine is present and carries on business in this District.

## BACKGROUND

21. On or about 12 August 2013, Lafarge hired Moran Towing Corporation to tow the Barge, laden with the Cargo, from Boston, Massachusetts to New Haven, Connecticut.

22. On 13 August 2013, the Tug and Barge sailed from Boston bound for New Haven.

23. While scarcely out of port, travelling westbound on the Cape Cod Canal toward New Haven, the Tug collided with the Barge ("Collision") as the result of (*inter alia*) a failure of the Steering Mechanism.

24. The Collision caused a hull fracture above the Barge's waterline.

25. The Collision also caused the Barge to ground, resulting in a second hull fracture below the Barge's waterline.

26. Because of the hull fractures, seawater infiltrated the Barge and caused a portion of the dry cement Cargo to wet and harden, rendering discharge impossible at the intended port in New Haven.

27. Because of the hull fractures, seawater infiltrated the Barge and damaged the Barge's machinery.

28. On 14 September 2013, the Tug towed the Barge to Lafarge's terminal in Brooklyn, New York, so Lafarge could attempt to salvage any non-damaged portion of the Cargo.

29. Discharge operations in Brooklyn commenced on 16 September 2013 and concluded on 22 September 2013. During those operations, Lafarge had to cut 10' x 12' holes into the Barge's steel deck in order to access the Cargo, rent special discharging equipment from a cement supplier, and employ industrial air-powered vibrators to loosen the hardened Cargo.

30. Through its efforts in Brooklyn, Lafarge discharged and sold at market price 4,207.45 of the 6,000 short tons of Cargo.

31. The remaining 1,792.55 short tons of Cargo were rendered a total loss.

32. On or about 30 September 2013, Lafarge towed the Barge to Detyens Shipyard in Charleston, South Carolina to remove and dispose of the damaged Cargo and repair the Barge.

33. As a result of the Collision, Lafarge sustained damages in excess of $4,639,706.10 as follows:

- $176,368.99 in Cargo damage;

- $1,254,030.40 in additional discharge and offloading expenses;

- $2,939,879.32 in Barge damages; and

- $269,427.13 in additional uninsured business expenses, including hiring of a replacement barge.

34. Lafarge submitted a claim for the Cargo damage and additional discharge and offloading expenses to AIG.

35. AIG paid and Lafarge accepted $1,365,199.70 to settle Lafarge's claim.

36. By virtue of its insurance payment, the terms of the policy of insurance, and/or operation of law, AIG became subrogated to the rights of Lafarge to the extent of that payment ($1,365,199.70).

37. Lafarge sustained $65,199.69 in uninsured losses relating to the Cargo damage and additional discharge and offloading expenses incurred to mitigate the loss. This sum is included in the $1,254,030.40 in additional discharge and offloading expenses specified in Paragraph 33.

38. Lafarge submitted a claim for the Barge damage to Zurich, National Union, Starr, and AGCS ("Hull Underwriters"), and the Hull Underwriters paid Lafarge $2,939,879.27 for that damage, less Lafarge's $75,000 insurance deductible.

39. By virtue of their insurance payments, the terms of the policy of insurance, and/or operation of law, Hull Underwriters are subrogated to the rights of Lafarge, including all subsidiary, affiliated and associated companies, corporations, and entities to the extent of their respective payments (totaling $2,864,879.32).

40. Lafarge sustained $344,427.13 in uninsured losses relating to the Barge damage (which includes its deductible noted in Paragraph 38).

### FIRST CAUSE OF ACTION AGAINST SPERRY MARINE: STRICT PRODUCTS LIABILITY

41. Plaintiffs incorporate by reference paragraphs ¶¶ 1-40 above as if fully set forth at length herein.

42. Sperry Marine designed, developed, manufactured, inspected and/or sold the Steering Mechanism in the normal course of business.

43. The Steering Mechanism was defective and unreasonably dangerous at the time Sperry Marine placed it into the stream of commerce.

44. The Steering Mechanism was used in a manner Sperry Marine anticipated, to wit, to steer the Tug.

45. The Collision was the result of (*inter alia*) a malfunction of the Steering Mechanism

46. Plaintiffs sustained the damages described herein as a direct and proximate result of the defective Steering Mechanism.

47. By reason of the foregoing, Sperry Marine is liable to Plaintiffs for damages in excess of $4,639,705.84, plus interest, costs, disbursements, and attorneys' fees.

WHEREFORE, Plaintiffs demand judgment in their favor and against Sperry Marine in the principal amount in excess of $4,639,705.84 together with all allowable interest thereon, costs, disbursements, attorneys' fees, and such other and further relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION AGAINST SPERRY MARINE:
NEGLIGENCE**

48. Plaintiffs incorporate by reference paragraphs ¶¶ 1-47 above as if fully set forth at length herein.

49. Sperry Marine inspected, serviced, maintained, and/or repaired the Steering Mechanism.

50. At all relevant times, Sperry Marine had a duty to exercise reasonable care in the inspection, service, maintenance, and/or repair of the Steering Mechanism.

51. Sperry Marine's conduct fell below the standard of care recited in Paragraph 50 when it failed to properly inspect, service, maintain, and/or repair the Steering Mechanism to prevent it from to malfunctioning..

52. Sperry Marine's breach of its duty of care was the direct and proximate cause of Plaintiffs' damages.

53. By reason of the foregoing, Sperry Marine is liable to Plaintiffs for damages in excess of $4,639,705.84, plus interest, costs, disbursements, and attorneys' fees.

WHEREFORE, Plaintiffs demand judgment in their favor and against Sperry Marine in the principal amount in excess of $4,639,705.84 together with all allowable interest thereon, costs, disbursements, attorneys' fees, and such other and further relief as the Court deems just and proper.

### FIRST CAUSE OF ACTION AGAINST JOHN DOE ENTITIES 1-10: STRICT PRODUCTS LIABILITY

54. Plaintiffs incorporate by reference paragraphs ¶¶ 1-53 above as if fully set forth at length herein.

55. John Doe Entities 1-10 sold and distributed the Steering Mechanism in the normal course of business.

56. The Steering Mechanism was defective and unreasonably dangerous when the John Doe Entities 1-10 placed it into the stream of commerce.

57. The Steering Mechanism was used in a manner John Doe Entities 1-10 anticipated, to wit, to steer the Tug.

58. The Collision was the result of (*inter alia*) a malfunction of the Steering Mechanism.

59. Plaintiffs sustained the damages described herein as a direct and proximate result of the defective Steering Mechanism.

60. By reason of the foregoing, John Doe Entities 1-10 are liable to Plaintiffs for damages in excess of $4,639,705.84, plus interest, costs, disbursements, and attorneys' fees.

WHEREFORE, Plaintiffs demand judgment in their favor and against Sperry Marine in the principal amount in excess of $4,639,705.84 together with all allowable interest thereon, costs, disbursements, attorneys' fees, and such other and further relief as the Court deems just and proper.

### SECOND CAUSE OF ACTION AGAINST JOHN DOE ENTITIES 1-10: NEGLIGENCE

61. Plaintiffs incorporate by reference paragraphs ¶¶ 1-60 above as if fully set forth at length herein.

62. John Doe Entities 1-10 inspected, serviced, maintained, and/or repaired the Steering Mechanism.

63. At all relevant times, John Doe Entities 1-10 each had a duty to exercise reasonable care in the inspection, service, maintenance, and/or repair of the Steering Mechanism.

64. The conduct of John Doe Entities 1-10 fell below the standard of care recited in Paragraph 63 when they failed to properly inspect, service, maintain, and repair the Steering Mechanism and prevent it from malfunctioning.

65. The breach of the duty of care of John Doe Entities 1-10 was the direct and proximate cause of Plaintiffs' damages.

66. By reason of the foregoing, John Doe Entities 1-10 are liable to Plaintiffs for damages in excess of $4,639,705.84, plus interest, costs, disbursements, and attorneys' fees.

WHEREFORE, Plaintiffs demand judgment in their favor and against John Doe Entities 1-10 in the principal amount in excess of $4,639,705.84 together with all

allowable interest thereon, costs, disbursements, attorneys' fees, and such other and further relief as the Court deems just and proper.

## FIRST CAUSE OF ACTION AGAINST JOHN DOE INDIVIDUALS 11-20: STRICT PRODUCTS LIABILITY

67. Plaintiffs incorporate by reference paragraphs ¶¶ 1-66 above as if fully set forth at length herein.

68. John Doe Individuals 11-20 sold and distributed the Steering Mechanism in the normal course of business.

69. The Steering Mechanism was defective and unreasonably dangerous when John Doe Individuals 11-20 placed it into the stream of commerce.

70. The Steering Mechanism was used in a manner John Doe Individuals 11-20 anticipated, to wit, to steer the Tug.

71. The Collision was the result of (*inter alia*) a malfunction of the Steering Mechanism

72. Plaintiffs sustained the damages described herein as a direct and proximate result of the defective Steering Mechanism.

73. By reason of the foregoing, John Doe Individuals 11-20 are liable to Plaintiffs for damages in excess of $4,639,705.84, plus interest, costs, disbursements, and attorneys' fees.

WHEREFORE, Plaintiffs demand judgment in their favor and against Sperry Marine in the principal amount in excess of $4,639,705.84 together with all allowa-

11

ble interest thereon, costs, disbursements, attorneys' fees, and such other and further relief as the Court deems just and proper.

### SECOND CAUSE OF ACTION AGAINST JOHN DOE INDIVIDUALS 11-20: NEGLIGENCE

74. Plaintiffs incorporate by reference paragraphs ¶¶ 1-73 above as if fully set forth at length herein.

75. John Doe Individuals 11-20 inspected, serviced, maintained, and/or repaired the Steering Mechanism.

76. At all relevant times, John Doe Individuals 11-20 each had a duty to exercise reasonable care in the inspection, service, maintenance, and/or repair of the Steering Mechanism.

77. The conduct of John Doe Individuals 11-20 fell below the standard of care recited in Paragraph 76 when they failed to properly inspect, service, maintain, and repair the Steering Mechanism to prevent it from malfunctioning.

78. The breach of the duty of care by John Doe Individuals 11-20 was the direct and proximate cause of Plaintiffs' damages.

79. By reason of the foregoing, John Doe Individuals 11-20 are liable to Plaintiffs for damages in excess of $4,639,705.84, plus interest, costs, disbursements, and attorneys' fees.

WHEREFORE, Plaintiffs demand judgment in their favor and against John Doe Individuals 11-20 in the principal amount in excess of $4,639,705.84 together

with all allowable interest thereon, costs, disbursements, attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 11, 2015

KENNEDY LILLIS SCHMIDT & ENGLISH
Attorneys for Plaintiffs AIG Europe Limited and Lafarge Building Materials, Inc.

By: *signature*
John T. Lillis Jr., Esq.
75 Maiden Lane, Suite 402
New York, New York  10038-4816
Telephone: 212-430-0800

Dated: Philadelphia, Pennsylvania
August 11, 2015

WHITE AND WILLIAMS, LLP
Attorneys for Plaintiffs Zurich American Insurance Company; National Union Fire Insurance Company of Pittsburgh, PA; Starr Indemnity & Liability Company; AGCS Marine Insurance Company; and Lafarge Building Materials, Inc.

By: *signature*
Ron L. Pingitore, Esq.
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
Telephone: 215-864-6324